**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No: 21-cr-081 (DLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN DANIEL LOFTUS,** | : | **18 U.S.C. § 5104(e)(2)(G)** |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Kevin Daniel Loftus ("Loftus") to thirty (30) days' incarceration, three (3) years' probation, and sixty (60) hours of community service, and order him to pay restitution in the amount of $500, as he agreed to do in the guilty plea agreement.

### I.     Introduction

The defendant, Kevin Daniel Loftus ("Loftus"), participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than one million dollars of property damage.

Loftus pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building. As explained herein, a sentence of thirty (30) days' incarceration is appropriate in this case because: (1) Loftus came to Washington, D.C., from

Wisconsin on or about January 4 to attend the "Stop he Steal" rally; (2) on January 6, Loftus attended the "Stop the Steal" rally and then marched to the U.S. Capitol; (3) after arriving at the U.S. Capitol, Loftus illegally and without permission walked inside the U.S. Capitol where he took several photos of himself and others inside the U.S. Capitol; (4) on January 7, Loftus wrote on his Facebook account that he was wanted by the FBI, and he identified himself as one of the individuals pictured in an FBI release of suspects wanted in the investigation; (5) also on that date, Loftus wrote on his Facebook account, "One of 700" referencing individuals inside the U.S. Capitol. Loftus also wrote, "That is right folks some of us are in it to win it;" and (6) on January 9, 2021, during an interview of Loftus conducted by the FBI in Eau Claire, Wisconsin, he admitted to walking inside the U.S. Capitol on January 6, 2021. Loftus also admitted to walking on what he thought was the top floor of the U.S. Capitol where he took several photos. Finally, Loftus was an active-duty soldier in the United States Army for six years, and his participation in the January 6 attack on the Capitol was at odds with his prior commitment to protect and defend the United States and the Constitution.

Even if he did not personally engage in violence or property destruction during the riot, before entering the Capitol on January 6, Loftus celebrated the violence of that day.  Loftus posted videos to his Facebook account of the attack on the U.S. Capitol and exclaimed that he and others were "in it to win it," presumably referring to the efforts of many of the January 6 rioters, including himself, to disrupt the Congressional certification of the 2020 Electoral College vote.

The Court must also consider that Loftus' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States*

*v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, Loftus' participation in a riot that actually succeeded in halting the Congressional certification of the Electoral College vote, his celebration and endorsement of the violence on that day, and his lack of remorse renders a sentence of thirty (30) days' incarceration, three (3) years' probation, and sixty (60) hours of community service appropriate.

## II.       Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF# 22 (Statement of Offense), at 1-3. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

### *Kevin Daniel Loftus' Role in the January 6, 2021 Attack on the Capitol*

Loftus came to Washington, D.C., from Wisconsin on or about January 4 to attend the "Stop the Steal" rally. On January 6, Loftus attended the "Stop the Steal" rally and then marched to the U.S. Capitol.  Subsequently, after arriving at the U.S. Capitol, Loftus illegally and without permission walked inside the U.S. Capitol. As outlined in the following series of photographs, Loftus (circled in red below) can be seen unlawfully entering the U.S. Capitol and exiting after spending approximately four minutes and 50 seconds inside.

Approx. Time: 2:45 pm
Upper West Terrace Door





Approx. Time: 2:45:26 pm



Approx. Time: 2:46:37 PM



Approx. Time: 2:47:23 PM





Approx. Time: 2:49: 40 PM



Approx. Time: 2:49:50 PM



In addition, Loftus took several photos of himself and others inside the U.S. Capitol.  On

or about January 7, Loftus bragged on his Facebook account that he was wanted by the FBI, and

he identified himself as one of the individuals pictured in an FBI release of suspects wanted in the

investigation. In addition, on or about January 7, Loftus wrote on his Facebook account, "One of

700" referencing individuals inside the U.S. Capitol. Loftus also wrote, "That is right folks some

of us are in it to win it," *see* below.




**Kevin Loftus**
One of 700 inside



Like · **Reply** · 2d


**Kevin Loftus**
That's right folks some of us are in it to win it

Like · **Reply** · 2d


**Kevin Loftus**
Girl was killed inside too



Like · **Reply** · 2d

 Write a comment...             

Press Enter to post.



*Loftus' FBI Interview.*

On or about January 8, 2021, during an interview of Loftus conducted by the FBI in Eau Claire, Wisconsin, Loftus admitted, *inter alia*, that he climbed up on a scaffolding at the U.S. Capitol for a good view and to take pictures and he walked inside the U.S. Capitol on what he thought was the top floor of the U.S. Capitol where Loftus took several photos and he later posted items on social media. Loftus also stated that he did not touch or hurt anyone.

*The Charges and Plea Agreement*

On January 11, 2021, Kevin Daniel Loftus was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(A) and (G). On January 12, 2021, he was arrested at his home in Wisconsin. On February 4, 2021, Loftus was charged by four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On October 19, 2021, Loftus pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in the Capitol Building. By plea agreement, Loftus agreed to pay $500 in restitution to the Department of the Treasury.

### III.     Statutory Penalties

Loftus now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(D). As noted by the plea agreement and the U.S. Probation Office, Loftus faces up to six months of imprisonment and a fine of up to $5,000. Loftus must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of thirty (30) days' incarceration, three (3) years' probation, and sixty (60) hours of community service.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021, is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms. It was the one of the only times in our history when the building was literally occupied by hostile participants. The attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with police officers and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at Loftus's individual conduct, the Court must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from police officers; and (9) whether the defendant demonstrated  sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to his fair and just punishment.

To be clear, had Loftus personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of Loftus is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish Loftus from most other misdemeanor defendants.  Loftus's lack

of violence and property destruction explains why he was charged only with, and permitted to plead guilty to, a misdemeanor rather than felony.

More broadly, Loftus' statements on social media during and after the attack demonstrate a total lack of remorse for his criminal conduct on January 6. Loftus bragged that he was wanted by the FBI, and he identified himself as one of the individuals pictured in an FBI release of suspects wanted in the investigation. Loftus also wrote that he was "One of 700" individuals unlawfully inside the U.S. Capitol, and that, like the others, he was "in it to win it."

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of thirty (30) days' incarceration, three (3) years' probation, and sixty (60) hours of community service.

### Defendant's Conduct While on This Court's Release Status

One of the most important factors in distinguishing a possible sentence of home detention and that of incarceration is Loftus's conduct while on release in this very case. As set forth below, on or about August 13, 2021, Loftus - under the alias "Zoso," sent individuals (whose screen names and posts are redated herein) a series of messages on a social media game application site. In those messages, Loftus boasted that he "already" possessed various firearms, and so was not worried that he would be prevented from buying any more as a condition of his sentence.[1] In addition, Loftus made several statements regarding this case and celebrated that he now was "famous" and a "hero" for his illegal actions on January 6, 2021. Loftus also stated that he gained that fame by "standing up for all Americans" because he "broke the law," and he would file lawsuits against unidentified persons after the criminal case was over. *See* below:

---

[1] After these posting by the defendant, law enforcement officers searched the defendant's apartment where no weapons were found, and the defendant stated he had turned over the weapons to a family member as previously instructed and the photos of him possessing the firearms were old photos.











**B.  Loftus' History and Characteristics**

Loftus has a disturbing 25-year history of failing to obey the law. Loftus has four convictions for DUI, one for reckless driving, and another conviction for theft, spread out over fifteen years. PSR ¶ ¶ 25-30.

Loftus served six years in the United States Army. As Judge Nichols observed, this is a double-edged sword. On one hand, Loftus is to be commended for his military service to this country, particularly since he served two tours of duty overseas. On the other hand, his participation in a violent attack on the U.S. Capitol and his belief that his conduct on January 6 was an act of patriotism that made him a "local hero" is the antithesis of patriotism and heroism that characterizes the vast majority of this country's military veterans.

**C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

**D.  The Need for the Sentence to Afford Adequate Deterrence**

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. The violence at the Capitol on January 6 was intended to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—

especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

### The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged over 700 individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes. A probationary sentence should not become the default.[4] *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 (statement of Judge Lamberth at sentencing).

The government and the sentencing courts have already begun to make meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment.

---

[3] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[4] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside, the nature of any statements he made (on social media or otherwise), whether he destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences. And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Gracyn Courtright is a Capitol Breach defendant who, like Loftus, expressed her hope that she would become famous for her unlawful conduct. She wrote on her social media account, "Infamy is just as good as fame. Either way I end up more known. XOXO"). She pleaded guilty to a violation of 18 U.S.C. § 1752(a)(1). Unlike the six-month maximum sentence for violations of 40 U.S.C. § 5104 to which Loftus pleaded guilty, that statute carries a maximum prison sentence of one year. Because Courtright's criminal conduct on January 6 was substantially worse – she entered the Senate chamber – than Loftus's, the government sought a prison sentence of six months for Courtright. Judge Cooper imposed a sentence of one month incarceration and one year of supervised release. Crim. No. 21-cr-072 (CRC).

Jennifer Ryan was another Capitol Breach defendant who, like Loftus, expressed a desire for favorable publicity from her unlawful conduct on January 6. As a self-described "influencer," Ryan broadcasted on social media, Youtube, and radio, garnering thousands of followers and millions of views. Because her statements on social media on January 6 were more extensive and inflammatory than those of Loftus, the government sought a sentence of sixty (60) days' incarceration for Ryan and Judge Cooper imposed that sentence.[5] Crim. No. 21-cr-050 (CRC). Because Ryan's and Courtright's overall criminal conduct was more egregious than Loftus's, the government is not recommending a multiple-month term of incarceration here.

Several Capitol Breach defendants convicted of violating 40 U.S.C. § 5104 were current or former members of the United States Armed Services. In part because of that service the government sought sentences of home detention or incarceration in those cases. Nevertheless, the courts-imposed sentences of probation on those defendants.[6] However, a sentence of thirty (30)

---

[5] For instance, when she arrived at the Capitol, Ryan posted on social media a recording of herself stating, "we're all gonna be up here, we're gonna be breakin' those windows, we're gonna be havin' to deal with the tear bombs" and proclaiming, as she approached the East Rotunda door, "Life or death, it doesn't matter, here we go." While inside the Capitol, Ryan joined shouts of "Fight for Trump" before chemical irritants caused her to retreat from the building. After leaving the Capitol, Ryan recorded herself encouraging others to enter and shouted, "we're pushing our way in," chanted "Hang Mike Pence," and stated, "really, we could go in there" and "the military's not gonna come."

[6] For instance: Thomas Vinson served in the United States Air Force for four years. He entered the Capitol shortly after it was breached and saw police officers being attacked in the Crypt and Rotunda. The government recommended a sentence of three months' home detention and three years' probation. Judge Walton imposed a sentence of 60 months' probation. Crim. No. 21-cr-355 (RBW).

Leonard Gruppo retired from the United States Army after as a Lieutenant Colonel after serving for thirty years, He entered the Capitol at the Senate Wing door where he broke window glass was scattered on the ground and remained in the Capitol even after a police officer advised him to depart. The government requested a sentence of 30 days' incarceration. Chief Judge Howell imposed a sentence of 24 months' probation. Crim. No. 21-cr-391 (BAH).

Jonathan Sanders was a United States Air Force veteran of 20 years. He entered the Capitol after seeing tear gas dispersed into the crowd and a rioter attempting to break a window of the Capitol Building. He exhibited no remorse for his conduct on January 6 when interviewed by the FBI. The government recommended a sentence of two months' home detention and three years' probation. Judge Nichols imposed a sentence of 36 months' probation. Crim. No. 21-cr-384 (CJN).

Brandon Nelson served six years as a member of the United States Air National Guard. He entered the Capitol Building with his codefendant Abram Markofski less than five minutes after other rioters smashed the windows next to the

days' incarceration in this case would not create an "unwarranted disparity" with the sentences imposed in those cases.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

Simply stated, the government (and this Court) should not ignore Loftus' bombastic rhetoric, if not hubris, during the pendency of this case. As discussed *supra*, Loftus flaunted the severity of these crimes, and showcased his unwillingness or inability to take this process

---

Senate Wing Door. They remained inside the building for over an hour, an unusually long incursion compared to most other rioters. After Nelson left, he shared text messages exulting in his unlawful conduct. The government requested 14 days' incarceration. Judge Bates imposed a sentence of 24 months' probation. Crim. No. 21-cr-344 (JDB).

Abram Markofski was a serving member of the Wisconsin National Guard when he unlawfully entered the Capitol Building on January 6 along with his codefendant, Brandon Nelson. Like Nelson, he remained in the Capitol for an hour and bragged in a text message that they had "stormed the Capitol and shut it down." The government requested 14 days' incarceration. Judge Bates imposed a sentence of 24 months' probation. Crim. No. 21-cr-344 (JDB).

Thomas Gallagher had a 32-year career with the Department of Defense. He entered the Capitol and remained there until he was arrested but did not engage in other aggravating conduct. The government recommended a sentence of one month home confinement and 36 months' probation. Judge Nichols imposed a sentence of 24 months' probation. Crim. No. 21-cr-41 (CJN).

seriously. Rather, Loftus was fond of his newfound "fame", and considered himself a "hero", a startling take on the events of January 6. This all suggests that while this Court should and must be focused on rehabilitation, punishment is an appropriate goal at sentencing too.

## V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Kevin Daniel Loftus to thirty (30) days' incarceration, three (3) years' probation, and sixty (60) hours of community service. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility.

<div style="margin-left: 40%;">

Respectfully submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:     */s/Emory V. Cole*
EMORY V. COLE
PA Bar No. 49136
Assistant United States Attorney
555 4th Street, N.W., Room 5840
Washington, D.C.  20530 – Office
202-252-7692
Emory.Cole@usdoj.gov

</div>